RONALD J. TENPAS                          **MADE JS-6**
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

KATE KONSCHNIK
E-mail:      Kate.Konschnik@usdoj.gov
California Bar Number: 223673
Telephone:  (202) 305-0312
Facsimile:  (202) 514-2583
MARK SABATH
E-mail:      Mark.Sabath@usdoj.gov
Massachusetts Bar Number: 659551
Telephone:  (202) 514-1196
Facsimile:  (202) 514-2583
JAMES BEERS, JR.
E-mail:      James.Beers@usdoj.gov
District of Columbia Bar Number: 488960
Telephone:  (202) 305-0455
Facsimile:  (202) 514-2583
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044

(See next page for additional counsel)

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

_____ )
UNITED STATES OF AMERICA,        )
                                 )
        Plaintiff                )       Case No. ED CV 07-00223-GW
                                 )       (JCRx)
        v.                       )
                                 )       **CONSENT DECREE**
CEMEX CALIFORNIA CEMENT,         )
LLC,                             )
                                 )
        Defendant.               )
                                 )
                                 )

CONSENT DECREE                           1

THOMAS P. O'BRIEN
United States Attorney
LEON W. WEIDMAN
Chief, Civil Division
United States Attorney's Office
MONICA L. MILLER
E-mail:      Monica.Miller@usdoj.gov
California Bar Number:  157695
Assistant United States Attorney
300 North Los Angeles Street
Room 7516
Los Angeles, CA 90012
Telephone:   (213) 894-4061
Facsimile:   (213) 894-7819

**Attorneys for the United States of America**

STEVEN RICE
E-mail:      srice@crowell.com
California Bar Number:  094321
JULIE A. HARRIS
E-mail:      julieharris@crowell.com
California Bar Number:  238672
Crowell & Moring LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614
Telephone:   (949) 263-8400
Facsimile:   (949) 263-8414
CHET M. THOMPSON
E-mail:      cthompson@crowell.com
Washington, DC Bar Number:  448559
Crowell & Moring LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004
Telephone:   (202) 624-2500
Facsimile:   (202) 628-5116

**Attorneys for CEMEX California Cement, LLC**

CONSENT DECREE                              2

WHEREAS, Plaintiff, the United States of America (the "United States"), on behalf of the United States Environmental Protection Agency ("EPA"), filed a Complaint against the Defendant CEMEX California Cement, LLC ("CEMEX"), for civil penalties and injunctive relief for violations of the Prevention of Significant Deterioration) ("PSD") provisions of the Clean Air Act (the "Act"), 42 U.S.C. §§ 7470-7492, and failure to comply the requirements with Title V of the Act, 42 U.S.C. §§ 7661-7661f, at its portland cement manufacturing plant located in and near Victorville, San Bernardino County, California (the "Facility");

WHEREAS, on July 10, 2007, the Court denied CEMEX's Motion to Dismiss or Strike the First and Second Claims to the Extent Civil Penalties are Sought, but granted CEMEX's Motion to Dismiss the Third Claim in its Entirety;

WHEREAS, the United States provided notice of the commencement of this action to the appropriate State air pollution control agency, in accordance with Section 113(b) of the Act, 42 U.S.C. § 7413(b);

WHEREAS, on August 10, 2007, CEMEX filed an answer denying any liability for the violations alleged in the First and Second Claims in the Complaint;

WHEREAS, the United States and CEMEX have agreed that settlement of this action is in the best interest of the parties and in the public interest, have agreed on the appropriateness of various measures intended to resolve the alleged violations and have further agreed that entry of this Consent Decree without further litigation is the most appropriate means of resolving this matter; and

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good

CONSENT DECREE                                    3

faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before trial and without the final adjudication, or admission, of any issue of fact or law except as provided in Section I (Jurisdiction and Venue), below, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. **JURISDICTION AND VENUE**

1.    This Court has jurisdiction of the subject matter herein and over the parties consenting hereto pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 and pursuant to Sections 113 and 167 of the Act, 42 U.S.C. §§ 7413 and 7477; and over the parties to this action.  Venue is proper under Section 113(b) of the Act, 42 U.S.C. § 7413(b), and under 28 U.S.C. § 1391(b) and (c) because the violations alleged in the Complaint are alleged to have occurred in, and Defendant conducts business in, this judicial district.

2.    For purposes of this Consent Decree, CEMEX agrees that the First and Second Claims in the Complaint state claims upon which relief may be granted pursuant to the Act, and CEMEX waives all objections and defenses that it may have to the jurisdiction of the Court or to venue.

## II. **APPLICABILITY**

3.    The obligations of this Consent Decree apply to and are binding upon the United States and upon CEMEX and any successor, assign, or other entity or person otherwise bound by law.

4.    No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve CEMEX of its obligation to ensure that the terms of the Decree are implemented. At least 30 days prior to such transfer, CEMEX shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to the United States, in accordance with Section XV (Notices) of this Consent Decree.  Any attempt to transfer ownership or operation of the Facility, or any portion thereof, without complying with this Paragraph constitutes a violation of this Decree.

5.    CEMEX shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Decree, as well as to any contractor retained to perform work required under this Consent Decree.  CEMEX shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.    In any action to enforce this Consent Decree, CEMEX shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any action necessary to comply with the provisions of this Consent Decree.

## III.  <u>DEFINITIONS</u>

7.    Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to

them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.     "30-Day Rolling Average Emission Limit" shall mean, for each Kiln, the maximum allowable rate of emission of a specified air pollutant from such Kiln and shall be expressed as pounds of such air pollutant emitted per ton of clinker produced (lbs/ton). Compliance with the 30-Day Rolling Average Emission Limit shall be determined for each Kiln in accordance with the following procedure: first, sum the total pounds of the air pollutant in question emitted from the Kiln during an Operating Day and the previous twenty-nine (29) Operating Days; second, sum the total tons of clinker produced by the Kiln during the same Operating Day and previous 29 Operating Days; and third, divide the total number of pounds of the air pollutant emitted from the Kiln during the thirty (30) Operating Days by the total tons of clinker produced by such Kiln during the same 30 Operating Days to arrive at the Kiln's lbs/ton average emissions over the rolling 30-day period. A new compliance determination of the 30-Day Rolling Average Emission Limit shall be calculated for each Kiln on each new Operating Day in accordance with the provisions of this Consent Decree. In calculating each compliance determination of the 30-Day Rolling Average Emission Limit, for a specified air pollutant at each Kiln, the total pounds of such air pollutant emitted from the Kiln during the 30-day rolling period shall include all emissions of that pollutant, including emissions during each Startup, Shutdown, or Malfunction that occurs during the period, except to the extent a Malfunction qualifies as a Force

Majeure event under Section X (Force Majeure) and CEMEX has complied with the requirements of that section.

        b.    "CEMEX" shall mean CEMEX California Cement, LLC.

        c.    "CEMS" shall mean a continuous emission monitoring system, *i.e.*, equipment that continuously measures and records the concentration or emission rate of a pollutant, in the units specified by the emission limit concerned.

        d.    "CO" shall mean carbon monoxide, measured in accordance with the provisions of this Consent Decree.

        e.    "Complaint" shall mean the complaint filed by the United States in this action.

        f.    "Consent Decree" or "Decree" shall mean this Decree.

        g.    "Continuously Operate" or "Continuous Operation" shall mean that when a monitoring or control technology is used at a Kiln, except during a Malfunction, it shall be operated at all times of Kiln Operation, consistent with the technological limitations, manufacturers' specifications, and good engineering and maintenance practices for such control technology and the Kiln.

        h.    "Date of Lodging" shall mean the date the Consent Decree is lodged with the Clerk of the Court for the United States District Court for the Central District of California.

        i.    "Day" shall mean a calendar day unless expressly stated to be a working day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

CONSENT DECREE        7

j.      "District" shall mean the Mojave Desert Air Quality Management District.

k.      "Effective Date" shall have the meaning given in Paragraph 70.

l.      "EPA" shall mean the United States Environmental Protection Agency and any successor department or agency.

m.      "Facility" shall mean CEMEX's portland cement manufacturing plant in and near Victorville, California, including the Black Mountain Quarry Plant located near Apple Valley, California, and the River Plant located in Victorville, California.

n.      "Kiln" as used in this Consent Decree shall have the same meaning as defined at 40 C.F.R. § 63.1341.

o.      "Kiln Q2" shall mean the Kiln located at the Black Mountain Quarry Plant identified in District permits as B001083.

p.      "Kiln Q3" shall mean the Kiln located at the Black Mountain Quarry Plant identified in District permits as B005362.

q.      "Kiln Operation" shall mean, with respect to each Kiln, any period when any raw materials are fed into the Kiln or any period when any combustion is occurring or any fuel is being fired in the Kiln.

r.      "Malfunction" as used in this Consent Decree shall have the same meaning as defined at 40 C.F.R. § 60.2.

s.      "NNSR" shall mean the Nonattainment New Source Review program within the meaning of Part D of Subchapter I of the Act, 42 U.S.C. §§ 7501-7515 and 40 C.F.R. Part 51.

CONSENT DECREE                              8

t.      "NOx" shall mean oxides of nitrogen, measured in accordance with the provisions of this Consent Decree.

u.      "NOx Control Technology" shall mean the control technology or emission control strategy to be installed or utilized at Kiln Q2 and Kiln Q3 to meet the NOx emission limits set forth in Paragraph 11 and 14 below.

v.      "Operating Day" shall mean any Day of Kiln Operation.

w.      "Paragraph" shall mean a portion of this Decree identified by an arabic numeral.

x.      "Parties" shall mean the United States and CEMEX.

y.      "PSD" shall mean the Prevention of Significant Deterioration program within the meaning of Part C of Subchapter I of the Act, 42 U.S.C. §§ 7470-7472 and 40 C.F.R. Part 52.

z.      "Section" shall mean a portion of this Decree identified by a roman numeral.

aa.     "SIP" shall mean the District portion of the California State Implementation Plan as submitted to and approved by EPA pursuant to Section 110 of the Act, 42 U.S.C. § 7410.

bb.     "Shut Down" shall mean to cease Kiln Operation.

cc.     "Startup" shall mean the commencement of Kiln Operation.

dd.     "$SO_2$" shall mean sulfur dioxide, measured in accordance with the provisions of this Consent Decree.

ee.     "Title V permit" shall mean a permit required by or issued pursuant to the requirements of 42 U.S.C. §§ 7661 - 7661f.

CONSENT DECREE                                    9

ff.    "Ton" or "tons" shall mean short ton or short tons.

gg.    "United States" shall mean the United States of America, acting on behalf of EPA.

### a.    IV.  <u>CIVIL PENALTIES</u>

8.    CEMEX shall pay to the United States as civil penalties pursuant to Section 113 of the Act, 42 U.S.C. § 7413, the sum of $2,000,000.00, as follows: (i) Within thirty (30) Days after the Effective Date of this Consent Decree, CEMEX shall pay $1,000,000.00, together with interest accrued on the sum of $2,000,000.00 from the Date of Lodging through the Effective Date at the rate specified in 28 U.S.C. § 1961 as of the Date of Lodging; and (ii) within 90 Days of the Effective Date of this Consent Decree, CEMEX shall pay the balance of the civil penalties due together with interest on the balance at the rate specified above accruing from the 31st Day following the Effective Date through the date of payment.

9.    CEMEX shall pay the civil penalties due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to CEMEX, following lodging of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Central District of California, 1200 U.S. Courthouse, 312 North Spring Street, Los Angeles, California, 90012, phone:  (213)894-2434.  At the time of payment, CEMEX shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalties owed pursuant to the Consent Decree in <u>United States v.</u>

CEMEX California Cement, LLC, and shall reference the civil action number and DOJ case number 90-5-2-1-08691, to the United States in accordance with Section XIV (Notices) of this Decree; by email to acctsreceivable.CINWD@epa.gov; and to:

> U.S. Environmental Protection Agency
> Fines and Penalties
> Cincinnati Finance Center
> P.O. Box 979077
> St. Louis, MO 63197-9000

10.  CEMEX shall not deduct the civil penalties paid under this Section in calculating its federal income tax.

## V.  COMPLIANCE REQUIREMENTS

### A.  Pollutant Emission Limits and Notification of NOx Control Technology

11.  CEMEX shall achieve the following emission limits for the following pollutants on the schedule identified in the table below:

| Kiln | Emission Limit Compliance Deadline | 30-Day Rolling Average Emission Limit (lbs/ton of clinker) | | |
|------|-----------------------------------|------|--------|-----|
|      |                                   | NOx  | $SO_2$ | CO  |
| 2    | October 1, 2009                   | 1.95 | 0.35   | 2.9 |
| 3    | July 1, 2009                      | 1.95 |        |     |

12.  No later than April 1, 2009, CEMEX shall notify EPA of the NOx Control Technology it will implement at Kiln Q3 to achieve and maintain the NOx emission rate specified in Paragraph 11, including a detailed description thereof. Thereafter, CEMEX may implement an equivalent alternative technology upon EPA's review and approval, provided that the use of any equivalent alternative technology shall not affect the compliance dates set forth in this Consent Decree. No later than May 1, 2009, CEMEX shall complete preliminary compliance testing of its selected $NO_X$ Control Technology.  No later than June 1, 2009, CEMEX shall submit to EPA all results of its preliminary compliance testing, together with copies of all correspondence with the District relating to the selected NOx Control Technology.

13.  No later than July 1, 2009, CEMEX shall notify EPA of the NOx Control Technology it will implement at Kiln Q2 to achieve and maintain the NOx emission rate specified in Paragraph 11, including a detailed description thereof. Thereafter, CEMEX may implement an equivalent alternative technology upon EPA's review and approval, provided that the use of any equivalent alternative technology shall not affect the compliance dates set forth in this Consent Decree. No later than August 1, 2009, CEMEX shall complete preliminary compliance testing of its selected $NO_X$ Control Technology.  No later than September 1, 2009, CEMEX shall submit to EPA all results of its preliminary compliance testing, together with copies of all correspondence with the District relating to the selected NOx Control Technology.

14.  In addition to the emission limits set forth in Paragraph 11 above, CEMEX shall achieve the following mass emission limits for the following pollutants on the schedule identified in the table below:

| Kiln(s) | Emission Limit Compliance Date | Emission Limit Per Operating Day (lbs. per Day of Operation) | | |
|---|---|---|---|---|
| | | NOx | SO$_2$ | CO |
| 3 | From July 1, 2009 to September 30, 2009 | 11,880 | Not applicable | Not applicable |
| 2 | October 1, 2009 | | 1,540 | 12,760 |
| 2 and 3 Combined | October 1, 2009 | 19,314 | | |

15.  As of October 1, 2009, CEMEX shall Continuously Operate the NOx Control Technology selected pursuant to Paragraph 13 above at Kiln Q2 at all times of Kiln Operation so as to meet the emission limits in Paragraphs 11 and 14 above.

16.  As of July 1, 2009, CEMEX shall Continuously Operate the NOx Control Technology selected pursuant to Paragraph 12 above at Kiln Q3 at all times of Kiln Operation so as to meet the emission limits in Paragraphs 11 and 14 above.

17.  As of the Effective Date, CEMEX shall comply with good pollution control practices at Kiln Q2 and Kiln Q3 in accordance with 40 C.F.R. § 60.11(d) at all times of Kiln Operation.

**B.**     **Continuous Emissions Monitoring System (CEMS).**

18.  As of the Effective Date, CEMEX shall Continuously Operate NOx, SO$_2$, and CO CEMS at each of Kiln Q2 and Kiln Q3 in accordance with the requirements of 40 C.F.R. Part 75.

19.  Each CEMS shall monitor and record the applicable emission rate for NOx, SO$_2$ and CO from each Kiln in units of pounds per ton of clinker produced and pounds per hour at such Kiln and shall be used to demonstrate compliance with the emission limits established in Section V.A. (Pollutant Emission Rates and Notification of NOx Control Technology) of this Consent Decree.

20.  During any time when the CEMS is inoperable or otherwise not measuring emissions from any Kiln, CEMEX shall apply the missing data substitution procedures in 40 C.F.R. Part 75, Subpart D.

## VI.  PROHIBITION ON NETTING CREDITS OR OFFSETS FROM REQUIRED CONTROLS

21.  CEMEX shall not use or rely on emission reductions generated as a result of compliance with the obligations of this Consent Decree in any Federal or State emission averaging, banking, trading or other emission credit or compliance program.  Emission reductions resulting from compliance with the requirements of this Consent Decree shall not be considered as a creditable contemporaneous emission decrease for the purpose of obtaining a netting credit under the NNSR or PSD programs.

22.  Nothing in this Consent Decree precludes CEMEX from using or relying on, including as creditable contemporaneous emission decreases, emission reductions achieved at the Facility beyond what is required by Paragraphs 11 and 14.

23.  Nothing in this Consent Decree is intended to preclude the emission reductions generated under this Decree from being considered by EPA or a State as creditable contemporaneous emission decreases for the purpose of attainment demonstrations submitted pursuant to Section 110 of the Act, 42 U.S.C. § 7410, or in determining impacts on National Ambient Air Quality Standards, PSD increments, or air quality-related values, including visibility in a Class I area.

## VII.  <u>PERMITS</u>

24.  Where any compliance obligation under this Section requires CEMEX to obtain a federal, state, or local permit or approval, CEMEX shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  CEMEX may seek relief under the provisions of Section X (Force Majeure) of this Consent Decree for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if CEMEX has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

25.  Within ninety (90) days after the Effective Date of the Consent Decree, CEMEX shall apply to include the emission limits, operational requirements, and monitoring and reporting requirements of this Consent Decree

CONSENT DECREE                    15

into federally-enforceable permit(s) or Facility-specific amendments to the SIP. For purposes of this Consent Decree, the federally-enforceable permit must be issued by the permitting authority under its authority to issue permits pursuant to the SIP, and not solely under its authority to issue permits pursuant to its Title V permit program.  Following submission of any application for the issuance or modification of such permit or for a Facility-specific amendment to the SIP, CEMEX shall cooperate with the appropriate authorities by promptly submitting all information that such authorities seek following receipt of its application.

26.  Within ninety (90) days after CEMEX is issued a federally-enforceable permit or Facility-specific amendment to the SIP (whichever occurs first) pursuant to Paragraph 25 above,  CEMEX shall apply for its revised Title V permit for the Facility to include the emission limits, operational requirements, and monitoring and reporting requirements of this Consent Decree.

27.  CEMEX shall provide EPA, in accordance with Section XV (Notices) of this Consent Decree, with a copy of each application (including any application submitted in compliance with this Consent Decree) for the issuance or modification of any federal, state, or local permit relating to air emissions from Kiln Q2, Kiln Q3, including any PSD or NNSR permit or modification, at the same time it is submitted to the permitting authority.  If CEMEX sells or transfers part or all of its ownership interest in Kiln Q2, Kiln Q3, or the Facility, CEMEX shall comply with the requirements of Paragraphs 25 and 26 with regard to that Kiln or the Facility prior to any such sale or transfer, unless CEMEX remains the holder of

the Title V or other federally enforceable permit for the Facility or for such Kiln

following any such sale or transfer.

## VIII.  **REPORTING REQUIREMENTS**

28.  Within 30 days after the end of each calendar-year half (*i.e.*, by  July

30,  and January 30) after the Date of Lodging, until termination of this Decree

pursuant to Section XIX (Termination),CEMEX shall submit semi-annual report to

EPA by January 31 and July 31 of each year for the preceding six months that

include:

a.     The date on which CEMEX commenced Continuous Operation

of the NOx Control Technology at Kiln Q2 and Kiln Q3 required to meet the

emission limits in Paragraphs 11 and 14 above, or the status of CEMEX's progress

in installing the new NOx Control Technology at Kiln Q2 and Kiln Q3, including

the dates on which each milestone was achieved at each Kiln, and problems

encountered or anticipated together with implemented or proposed solutions;

provided this reporting obligation shall cease with respect to each Kiln once

CEMEX has reported the commencement of Continuous Operation of the NOx

Control Technology for such Kiln;

b.     All CEMS data collected for each Kiln, including any missing

data for which CEMEX applied missing data substitution procedures under Section

V.B of this Consent Decree;

c.     Demonstration of compliance with all 30-Day Rolling Average

Emission Limits of this Consent Decree.

CONSENT DECREE                                        17

d.      Demonstration of compliance with all Operating Day Mass Limits under Section V.A of this Consent Decree; and

e.      The status of CEMEX's application for the issuance or modification of a permit or for the adoption and approval of a Facility-specific SIP amendment submitted in compliance with this Consent Decree.

29.  The semi-annual report shall also include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If CEMEX violates, or has reason to believe that it may violate, any requirement of this Consent Decree, CEMEX shall notify the United States, of such violation and its likely duration, in writing, within ten working days of the day CEMEX first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, CEMEX shall so state in the report. CEMEX shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 days of the day CEMEX becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves CEMEX of its obligation to provide any notice required by Section X (Force Majeure) of this Consent Decree.

30.  Whenever any violation of this Consent Decree, or of any applicable permits, or any other event affecting CEMEX's performance under this Decree, or

the performance of Kiln Q2, Kiln Q3, or the Facility, may pose an immediate threat to the public health or welfare or the environment, CEMEX shall notify EPA, orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after CEMEX first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

31.  All reports shall be submitted to the persons designated in Section XV (Notices) of this Consent Decree.

32.  Each report submitted by CEMEX under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

33.  The reporting requirements of this Consent Decree do not relieve CEMEX of any reporting obligations required by the Clean Air Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

34.  Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Decree and as otherwise permitted by law.

## IX.  **STIPULATED PENALTIES**

35.  CEMEX shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified in Table 1 below, unless excused under Section X (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

### TABLE 1

| CONSENT DECREE VIOLATIONS | STIPULATED PENALTY |
| --- | --- |
| Failure to pay the civil penalties as specified in Section IV (Civil Penalties) of this Consent Decree. | $5,000 per day |
| Failure to comply with any 30-Day Rolling Average Emission Limit where the violation is less than 5% in excess of the limits set forth in this Consent Decree. | $1,500 per day for each pollutant and each 30-day rolling period. |
| Failure to comply with any 30-Day Rolling Average Emission Limit where the violation is equal or greater than 5% but less than 10% in excess of the limits set forth in this Consent Decree. | $3,000 per day for pollutant and each 30-day rolling period. |

| | |
|---|---|
| Failure to comply with any 30-Day Rolling Average Emission Limit where the violation is equal or greater than 10% in excess of the limits set forth in this Consent Decree. | $5,000 per day for each pollutant and each 30-day rolling period. |
| Failure to comply with any Operating Day Mass Emission Limit where the violation is less than 5% in excess of the limits set forth in this Consent Decree. | $1,500 per day for each pollutant and for each Operating Day. |
| Failure to comply with any Operating Day Mass Emission Limit where the violation is equal or greater than 5% but less than 10% in excess of the limits set forth in this Consent Decree. | $3,000 per day for each pollutant and for each Operating Day. |
| Failure to comply with any Operating Day Mass Emission Limit where the violation is equal or greater than 10% in excess of the limits set forth in this Consent Decree. | $5,000 per day for each pollutant and for each Operating Day. |
| Failure to timely install, commence Continuous Operation, or to maintain Continuous Operation of new NOx Control Technology at any Kiln. | For each Kiln, $5,000 per day during the first 30 days, $10,500 per day and each day thereafter. |
| Failure to apply for the issuance or modification of any permit or the adoption and approval of a Facility-specific SIP amendment in accordance with Section VII (Permits). | $1,000 per day for each such failure. |
| Failure to timely submit, modify, or implement, as approved, any report, plan, study, analysis, protocol, or other submittal required by this Consent Decree. | $750 during the first ten days, $1,000 per day thereafter. |

36.  Subject to the provisions of Paragraph 35 above, stipulated penalties under this Section shall begin to accrue on the day after performance is due or on

the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

37.  CEMEX shall pay any stipulated penalty within thirty (30) days of receiving the United States' demand.

38.  The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due the United States under this Consent Decree.

39.  Stipulated penalties shall continue to accrue as provided in this Section, during any Dispute Resolution, but need not be paid until the following:

a.    If the dispute is resolved by agreement or by a decision of United States that is not appealed to the Court, CEMEX shall pay accrued penalties determined to be owing, together with interest within 30 days of the effective date of the agreement or the receipt of EPA's decision or order.

b.    If the dispute is appealed to the Court and the United States prevails in whole or in part, CEMEX shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 days of receiving the Court's decision or order, except as provided in Subparagraph c., below.

c.    If any Party appeals the District Court's decision, CEMEX shall pay all accrued penalties determined to be owing, together with interest, within 15 days of receiving the final appellate court decision.

40.  CEMEX shall pay stipulated penalties owing to the United States in the manner set forth in, and with the confirmation notices required by, Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

41.  CEMEX shall not deduct stipulated penalties paid under this Section in calculating its federal income tax.

42.  If CEMEX fails to pay stipulated penalties according to the terms of this Consent Decree, CEMEX shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from securing any remedy otherwise provided by law for CEMEX's failure to pay any stipulated penalties.

43.  Subject to the provisions of Section XIII (Effect of Settlement/Reservation of Rights) of this Consent Decree, the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for CEMEX's violation of this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a violation of any applicable statute or regulation, CEMEX shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## X.  FORCE MAJEURE

44.  "Force majeure," for purposes of this Consent Decree, is defined as any event, including those events described in Paragraph 24, arising from causes

CONSENT DECREE                                    23

beyond the control of CEMEX, of any entity controlled by CEMEX, or of CEMEX's contractors, that delays or prevents the performance of any obligation under this Decree despite CEMEX's best efforts to fulfill the obligation. "Best efforts" includes anticipating any potential force majeure event and addressing the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include CEMEX's financial inability to perform any obligation under this Consent Decree.

45. CEMEX shall provide notice to the United States orally or by electronic or facsimile transmission as soon as possible, but not later than 5 days after the time CEMEX first knew of, or by the exercise of due diligence, should have known of, a claimed force majeure event. CEMEX shall also provide written notice to the United States, as provided in Section XV (Notices) of this Consent Decree, within 10 days of the time CEMEX first knew of, or by the exercise of due diligence, should have known of, the event. The notice shall state the anticipated duration of any delay; its cause(s); CEMEX's past and proposed actions to prevent or minimize any delay; a schedule for carrying out those actions; and CEMEX's rationale for attributing any delay to a force majeure event. Failure to provide oral and written notice as required by this Paragraph shall preclude CEMEX from asserting any claim of force majeure.

46. If the United States agrees that a force majeure event has occurred, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA. An extension of

time to perform the obligations affected by a force majeure event shall not, by itself, extend the time to perform any other obligation.

47.  If the United States does not agree that a force majeure event has occurred, or does not agree to the extension of time sought by CEMEX, the United States' will notify CEMEX in writing of its position and the United States' position shall be binding, unless CEMEX invokes Dispute Resolution under Section XI (Dispute Resolution) of this Consent Decree.  In any such dispute, CEMEX bears the burden of proving, by a preponderance of the evidence, that each claimed force majeure event is a force majeure event, that CEMEX gave the notice required by Paragraph 45, that the force majeure event caused any delay CEMEX claims was attributable to that event, and that CEMEX exercised best efforts to prevent or minimize any delay caused by the event.

## XI.  **DISPUTE RESOLUTION**

48.  Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Decree.  CEMEX's failure to seek resolution of a dispute under this Section shall preclude CEMEX from raising any such issue as a defense to an action by the United States to enforce any obligation of CEMEX arising under this Consent Decree.

49.  <u>Informal Dispute Resolution</u>.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when CEMEX sends the United States a written Notice of Dispute.  Such Notice of Dispute shall state

clearly the matter in dispute. The period of informal negotiations shall not exceed 20 days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 days after the conclusion of the informal negotiation period, CEMEX invokes formal dispute resolution procedures as set forth below.

50. <u>Formal Dispute Resolution</u>. CEMEX shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion supporting CEMEX's position and any supporting documentation relied upon by CEMEX.

51. The United States shall serve its Statement of Position within 21 days of receipt of CEMEX's Statement of Position. The United States' Statement of Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on CEMEX, unless CEMEX files a motion for judicial review of the dispute in accordance with the following Paragraph.

52. CEMEX may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XV (Notices) of this Consent Decree, a motion requesting judicial resolution of the dispute. The motion must be filed within 15 days of receipt of the United States' Statement of

Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of CEMEX's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

53.  The United States shall respond to CEMEX's motion within the time period allowed by the Local Rules of this Court. CEMEX may file a reply memorandum, to the extent permitted by the Local Rules.  Except as otherwise provided in this Consent Decree, in any dispute brought under this Section, CEMEX shall bear the burden of demonstrating that its position clearly complies with this Decree.  The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law and CEMEX reserves the right to argue otherwise.

54.  The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of CEMEX under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 39.  If CEMEX does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

55.  If CEMEX prevails on a disputed issue, the Parties may agree on, or this Court may order, an extension or modification of the schedule for completion of the activities required under this Consent Decree to account for the delay that occurred as a result of the dispute resolution.

## XII.  <u>INFORMATION COLLECTION AND RETENTION</u>

56.  The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

      a.      monitor the progress of activities required under this Consent Decree;

      b.      verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

      c.      obtain samples and, upon request, splits of any samples taken by CEMEX or its representatives, contractors, or consultants;

      d.      obtain documents, including photographs and similar data; and

      e.      assess CEMEX's compliance with this Consent Decree.

57.  Until five years after the termination of this Consent Decree, CEMEX shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to

CEMEX's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, CEMEX shall provide copies of any document, record, or other information required to be maintained under this Paragraph.

58. At the conclusion of the information-retention period provided in the preceding Paragraph, CEMEX shall notify the United States at least 60 days prior to the destruction of any document, record, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, CEMEX shall deliver any such document, record, or other information to EPA. CEMEX may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If CEMEX asserts such a privilege, it shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by CEMEX. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

59. CEMEX may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under

40 C.F.R. Part 2.  As to any information that CEMEX seeks to protect as CBI, CEMEX shall follow the procedures set forth in 40 C.F.R. Part 2.

60.  This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the States pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of CEMEX to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

61.  This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the Date of Lodging.

62.  The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 61.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 61.  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, CEMEX's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

63.   This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations.  CEMEX is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and CEMEX's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such law, regulation, or permit.  The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that CEMEX's compliance with any aspect of this Decree will result in compliance with provisions of the Act or with any other provision of federal, state, or local laws, regulations, or permits.

64.   This Consent Decree does not limit or affect the rights of CEMEX or of the United States or the States against any third party, not party to this Decree, nor does it limit the rights of third parties, not party to this Decree, against CEMEX, except as otherwise provided by law.

65.   This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Decree.

## XIV.  COSTS

66.   The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalties or stipulated penalties due but not paid by CEMEX.

# XV.  **NOTICES**

67.  Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

As to EPA:

Adam M. Kushner
U.S. Environmental Protection Agency
MC 2242A
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

Chief, Air Enforcement Office
Air Division (AIR-5)
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

As to the United States – to the EPA addressees above and to:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-2-1-08691

and

As to CEMEX:

Leslie S. White
Executive Vice President and General Counsel
CEMEX, Inc.
840 Gessner, Suite 1400
Houston, Texas 77024

68.  Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

CONSENT DECREE                                    32

69.  Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVI.  EFFECTIVE DATE

70.  The Effective Date of this Consent Decree shall be the date upon which this Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded in the Court's docket.

## XVII.  RETENTION OF JURISDICTION

71.  The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XI (Dispute Resolution) and XX (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XVIII.  MODIFICATION

72.  The terms of this Consent Decree, including any attached appendix, may be modified only by a subsequent written agreement signed by the Plaintiff and CEMEX.  Where the modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court.  For purposes of this Consent Decree, a change in the NOx Control Technology utilized by CEMEX to comply with the emission limits in Paragraphs 11 and 14 above shall not constitute a material change to this Consent Decree, but no such change in NOx Control Technology shall in any way affect CEMEX's obligation to meet those emission limits in accordance with this Consent Decree.

CONSENT DECREE                                    33

73.  Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section XI (Dispute Resolution) of this Decree, provided, however, that, instead of the burden of proof provided by Paragraph 53, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XIX.  <u>TERMINATION</u>

74.  CEMEX may serve upon the United States a Request for Termination of this Consent Decree provided:

a.      CEMEX has completed the requirements of Section V.A (Compliance Requirements) of this Consent Decree;

b.  CEMEX has thereafter maintained continuous satisfactory compliance with this Decree for a period of three years;

c.      CEMEX has complied with all other requirements of this Decree  and has paid the civil penalties and accrued stipulated penalties as required by this Decree; and

d.      the emission limits, operational requirements, and monitoring and record keeping requirements of this Consent Decree applicable to the Facility, and Kiln Q2 and Kiln Q3 have been incorporated into a revised Title V permit for the Facility and a Facility-specific SIP amendment.

75.  The Request for Termination shall state that the requirements above have been satisfied and shall provide all necessary supporting documentation. Following receipt by the United States of CEMEX's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that

the Parties may have as to whether CEMEX has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

76.  If the United States does not agree that the Consent Decree may be terminated, CEMEX may invoke Dispute Resolution under Section XI (Dispute Resolution) of this Consent Decree.  However, CEMEX shall not seek Dispute Resolution of any dispute regarding termination under Paragraph 52 of Section XI (Dispute Resolution) until 60 days after service of its Request for Termination.

## XX.  PUBLIC PARTICIPATION

77.  This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Decree is inappropriate, improper, or inadequate.  CEMEX consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Decree by the Court or to challenge any provision of the Decree, unless the United States has notified CEMEX in writing that it no longer supports entry of the Decree.

## XXI.  SIGNATORIES/SERVICE

78.  Each undersigned representative of CEMEX and other parties to the Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is

fully authorized to enter into the terms and conditions of this Decree and to execute and legally bind the Party he or she represents to this document.

79.  This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

80.  CEMEX shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service or process by mail on behalf of CEMEX with respect to all matters arising under or relating to this Consent Decree.

## XXII.  INTEGRATION

81.  This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than the notice of new NOx Control Technology referenced in Paragraph 12 and any deliverable that is subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXIII.  FINAL JUDGMENT

82.  Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and CEMEX.

Dated and entered this 20th day of January, 2009,

_____
UNITED STATES DISTRICT COURT JUDGE
Central District of California

Through their undersigned representatives, the Parties agree and consent to entry of the foregoing Consent Decree in <u>United States of America v. CEMEX California Cement, LLC</u>

      FOR PLAINTIFF UNITED STATES OF AMERICA:


_____     Date:
RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


_____     Date:
KATE KONSCHNIK
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
(202) 305-0312 (Tel.)
(202) 514-2583 (Fax)
kate.konschnik@usdoj.gov

THOMAS P. O'BRIEN
United States Attorney


_____
LEON W. WEIDMAN
Chief, Civil Division
United States Attorney's Office
MONICA L. MILLER
Assistant United States Attorney
300 North Los Angeles Street
Room 7516
Los Angeles, CA 90012
(213) 894-4061 (Tel.)
(213) 894-7819 (Fax)
Monica.Miller@usdoj.gov

Through their undersigned representatives, the Parties agree and consent to entry of the foregoing Consent Decree in <u>United States of America v. CEMEX California Cement, LLC</u>

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:


_____        Date:
GRANTA Y. NAKAYAMA
Assistant Administrator
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency


_____        Date:
ADAM M. KUSHNER
Director, Air Enforcement Division
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

Through their undersigned representatives, the Parties agree and consent to entry of the foregoing Consent Decree in <u>United States of America v. CEMEX California Cement, LLC</u>

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

_____     Date:
NANCY J. MARVEL
Regional Counsel
United States Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, CA 94105

_____     Date:
IVAN LIEBEN
Assistant Regional Counsel
United States Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, CA 94105

CONSENT DECREE                    40

Through their undersigned representatives, the Parties agree and consent to entry of the foregoing Consent Decree in <u>United States of America v. CEMEX California Cement, LLC</u>

FOR CEMEX CALIFORNIA CEMENT, LLC:

_____        Date: _____
LESLIE S. WHITE
Executive Vice President and General Counsel
CEMEX, Inc.
_____

The following is the name and address of CEMEX California Cement, LLC's's agent for service pursuant to Paragraph 80: